# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOEL R. PEDELAHORE                                      CIVIL ACTION

VERSUS                                                  NO. 11-1575

WARDEN R. TANNER                                        SECTION "N"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. It was recently reassigned to me. Record Doc. No. 12. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Joel Pedelahore, is incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  On or about August 24, 2001, Pedelahore was charged by bill of information[3] in St. Tammany Parish with aggravated oral sexual battery and molestation of a juvenile.[4]  The charges against Pedelahore were not tried together.  The instant action addresses only the charge of aggravated oral sexual battery.

The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> On March 10, 2001, [D.H.] was working as a shift manager for Taco Bell in Slidell, Louisiana. Because she was assigned to the night shift and her husband was also working a night shift, she asked a former co-worker, Pauline Bridges, to keep her six-year old daughter, C.H., overnight. Pauline lived with her boyfriend, the defendant. The next morning, [D.H.] arrived to pick up C.H. at noon and was informed that C.H. was with the defendant at a nearby park. She drove to the park and picked up her daughter without incident.
>
> Ten days later on March 21, 2001, [D.H.] had a conversation with C.H. about good and bad touches. The conversation was unrelated to the overnight stay at the home of the defendant. As [D.H.] was talking to her daughter and telling C.H. to tell her if anyone ever touched her private parts, C.H. reported that "Joel licked my tee-tee." [D.H.] shared this with her husband and, over the next six days, the couple commiserated over whether to report the incident and possibly cause more trauma to their daughter. They finally decided to report it.
>
> St. Tammany Parish Sheriff's Office Detective Tina Quaves was assigned to the investigation of physical and sexual abuse of children. The parents of C.H. told the detective what C.H. had reported and gave a written statement.  As a result, the defendant was identified as a suspect and a further interview was arranged so that a special forensic interviewer of children could interview C.H. The child's

---

[2]Rec. Doc. No. 1.

[3]The bill of information is not dated, but it is file-stamped August 24, 2001. St. Rec. Vol. 3 of 10.

[4]St. Rec. Vol. 3 of 10.

report to the forensic interviewer was consistent with the mother's report to the detective, and the child seemed consistent with her statements during the interview. C.H. appeared relaxed, intelligent, believable and consistent.

Amy Streicher, the forensic interviewer at the Children's Advocacy Center who interviewed C.H., testified to her routine procedures for conducting such interviews. . . . During the interview, C.H. volunteered that "her friend," the defendant, had done something bad to her. She used a diagram and anatomically correct doll to tell the interviewer what happened. Streicher identified the videotape made of the interview as an accurate depiction of her session with the child.

C.H., who was eight years old at the time of the trial, testified in court concerning the incident. She recalled being taken care of on one prior occasion at Pauline's house. She spent the night on the occasion in question. The next morning, the defendant took her to the park and, after they got home he "licked [her] private." She testified that she did not tell her mother right away because she thought she would be angry. She identified the defendant in court as the person who molested her.

C.H. was cross-examined about details of her stay at the defendant's home. She reported that she slept with Pauline and Joel in their bed. When she awoke, Pauline had already gone to work. She sat on the bed and colored while Joel worked to fix a ceiling fan in the bedroom. Afterward, they went to the park and returned. The defendant's brother, John Pedelahore, who was at the house, left but returned shortly thereafter. The disputed incident occurred on the bed in the bedroom with the door open, while the defendant's brother was in another room reading the newspaper. When asked how this happened, she responded that she did not know.

John Pedelahore, the defendant's brother and a convicted felon, was called to testify by the defense. He indicated that C.H. had stayed at the home twice. She might have spent the night there the previous time. He recalled that when he got home at 2:30 a.m., the defendant was sleeping on the sofa. When he got up, C.H. and the defendant were in the bedroom with the door closed. He went out for a paper and returned and fixed breakfast. C.H. came out in her nightgown and started coloring, then she went back into the bedroom. When C.H. and the defendant came out of the bedroom, C.H. was dressed and she and the defendant went to the park. When they returned, they went back into the bedroom. The recollection of the witness was that the defendant did not wake up until around 10:00 a.m. that morning. The defendant was asleep in the bedroom and C.H. was in the room with him. From where the witness was in the apartment that morning, he could not see into the bedroom. He assumed the defendant dressed C.H. He did not recall the defendant commenting about a bottle of glitter lotion. He agreed that there would have been time for the defendant to commit the charged offense in the bedroom.

Pauline Bridges testified she watched C.H. two or three times at defendant's home. She and C.H. slept alone on the last occasion and the defendant slept on the couch in the living room. Pauline recounted that at one point during the overnight

stay in question, she got up and engaged in sexual intercourse with the defendant on the sofa while C.H. was asleep in the bedroom. According to her vague recollection, she dressed C.H. before she left for work. Pauline testified she thought C.H. had a crush on the defendant, and then described an incident that occurred at a pizza restaurant, wherein the defendant caught C.H. looking down his pants. Lastly, Pauline testified she was afraid of the defendant because he sent her threatening letters from prison about her testimony in this case. Three of those letters were admitted into evidence. In one of those letters, the defendant asked Pauline to testify that they engaged in oral sex on the sofa during C.H.'s overnight stay, and that he was sorry he messed up and was arrested. Pauline denied engaging in oral sex with the defendant during the period in question.

The defendant testified on his own behalf. He admitted that he had previously been convicted of three felonies. According to the defendant, he did not like children and was not happy about C.H. spending the night at his home. He recalled Pauline had dressed C.H. before she left for work. The child opted to color in the bedroom while he worked on installing a ceiling fan and she handed him parts. He claimed that C.H. was getting glitter lotion all over his black comforter and that he threatened to spank her. Then, feeling bad about the incident, he took her to the park. Later, he cooked lunch for her and took her to the park again.

The defendant insisted that he had oral sex with Pauline on the sofa that night while they thought C.H. was asleep in the bedroom. He claimed that he had written angry letters to Pauline because she had taken some of his things and was seeing someone else.

At trial, the defense's theory was that C.H. fabricated the story because she was angry about being disciplined over the glitter lotion, because she may have witnessed the defendant and Pauline having oral sex, or because C.H. had a crush on the defendant.[5]

State v. Pedelahore, 895 So.2d 77 (Table), 2004-KA-0678 (La. App. 1st Cir. 2/11/05)

(footnoted original) (unpublished opinion).[6]

---

[5]In brief, defense counsel argued at trial that C.H.'s mother prodded C.H. into saying something about the defendant after another woman, identified by defense counsel as Crystal Schulle, repeated rumors about the defendant. However, C.H.'s mother did not agree to this claim, and Crystal Schulle was not called as a witness by the State or the defendant.

[6]St. Rec. Vol. 2 of 10.

Pedelahore was tried by a jury on October 14, 2003, and was found guilty as charged.[7] On November 19, 2003, Pedelahore was sentenced to twenty (20) years imprisonment at hard labor without benefit of probation, parole or suspension of sentence.[8] On December 11, 2003, Pedelahore was found to be a third felony offender. His original 20-year sentence was vacated and he was resentenced to thirty (30) years at hard labor to be served without benefit of probation, parole, or suspension of sentence.[9]

On June 28, 2004, counsel filed an appellate brief on Pedelahore's behalf raising the following claims: (1) The evidence was insufficient to support his conviction. (2) The trial court's rulings were erroneous. (3) The trial court erred in finding appellant to be a third felony offender. Counsel also requested a review for errors patent on the face of the record.[10] On February 11, 2005, the Louisiana First Circuit Court of Appeal affirmed the conviction, finding no merit to the first two assignments of error. The appellate court, however, found that the trial court erred in adjudicating Pedelahore to be a third felony offender, but found that Pedelahore's status as a second felony offender was established. Accordingly, the court rendered a modified judgment of adjudication, finding Pedelahore a second felony habitual offender, and remanded the matter to the

---

[7]St. Rec. Vol. 5 of 10, pp. 38-40, Minute Entry, 10/14/03; St. Rec. Vol. 5 of 10, p. 106, Jury Verdict, 10/14/03.

[8]St. Rec. Vol. 5 of 10, pp. 42-43, Minute Entry, 11/19/03.

[9]St. Rec. Vol. 5 of 10, pp. 45-45A, Minute Entry, 12/11/03.

[10]St. Rec. Vol. 1 of 10, Appeal Brief, 2004-KA-0678, 6/28/04.

trial court for resentencing.[11]  On March 29, 2005, the trial court resentenced Pedelahore to serve a period of twenty-five (25) years at hard labor without benefit of probation, parole or suspension of sentence.[12]

On April 20, 2005, Pedelahore filed a pro se writ application with the Louisiana Supreme Court challenging his conviction.[13]  On December 9, 2005, the Louisiana Supreme Court denied the writ application without stated reasons.[14]  On February 10, 2006, the Louisiana First Circuit affirmed Pedelahore's resentencing.[15]  On February 16, 2007, the Louisiana Supreme Court, without stated reasons, denied Pedelahore's writ application regarding his resentencing.[16]

On January 16, 2006, while the appeal regarding his sentencing was pending, Pedelahore filed his first application for post-conviction relief with the state district court, raising the following claims:  (1) He was denied the right intelligently to exercise his

---

[11]State v. Pedelahore, 895 So.2d 77 (Table), 2004-KA-0678 (La. App. 1 Cir. 2/11/05); St. Rec. Vols. 2 and 7 of 10.

[12]St. Rec. Vol. 5 of 10, pp. 46-46A, Minute Entry, 3/29/05.

[13]St. Rec. Vol. 2 of 10, La. S. Ct. Writ Application, 2005-KO-1020.  St. Rec. Vol. 1 of 10, La. S. Ct. Letter, 2005-K-1020, 4/20/05 (showing filing on 04/12/26/07 and postmark on 3/8/05).

[14]State v. Pedelahore, 916 So.2d 1053 (La. 2005); St. Rec. Vol. 2 of 10, La. S. Ct. Order, 2005-KO-1020, 12/9/05; Rec. Doc. No. 1-2, p. 16.

[15]State v. Pedelahore, 924 So.2d 515 (Table), 2005 KA 1016 (La. App. 1 Cir. 2/10/06); St. Rec. Vo1. 1 of 10.

[16]State v. Pedelahore, 949 So.2d 412 (La. 2007); La. S. Ct. Order, 2006 KO 1834, 2/16/07; St. Rec. Vol. 1 of 10.

peremptory challenges.  (2) He was denied due process by prosecutor misconduct during opening, closing and rebuttal arguments.  (3) He was denied a fair trial when the trial court improperly held a competency hearing in the middle of trial.  (4) He was denied due process because he was not present at every stage of the proceedings.  (5) He was denied a public trial when the trial court, in chambers, held a hearing regarding possible bias of a prospective juror.  (6) He was denied due process when the prosecutor violated the sequestration order by allowing witnesses to meet in his office.  (7) He received ineffective assistance of trial counsel.  (8) He was denied due process when the State introduced unreliable evidence and evidence regarding the use of anatomically correct dolls. (9) He was denied his right of confrontation when the prosecutor introduced hearsay statements, testimony and evidence.  (10) He was denied due process when the State introduced hearsay testimony as an exception to the hearsay rules. (11) He was denied due process when the trial court limited his questions on sex and did not allow him to introduce letters which were part of the discovery in the case.  (12) He was denied due process when the State was allowed to introduce evidence of prior bad acts. (13) He was denied due process by virtue of the State's introduction of irrelevant and prejudicial evidence. (14) He was denied due process when the jurors were permitted to bring written evidence into the jury room.  (15) He was denied due process because the State used known false testimony to obtain his conviction.  (16) He was denied due process because the State suppressed exculpatory evidence.  (17) He was denied due process

when the State either destroyed or failed to preserve exculpatory evidence. (18) He was denied due process when the State introduced evidence pursuant to a statute that was applied retroactively to his case. (19) He was denied due process when he was forced to proceed to trial before a biased judge. (20) He was denied an effective appeal. (21) He was denied effective assistance of appellate counsel.[17]

On February 13, 2006, the state district court dismissed Pedelahore's post-conviction application, providing no basis for its decision.[18]

On March 9, 2006, Pedelahore filed a writ application with the Louisiana First Circuit, asserting the same claims that he had raised in the state trial court.[19] On May 30, 2006, the Louisiana First Circuit denied Pedelahore's writ application, stating: "Relator failed to include the necessary documentation, including pertinent minute entries, trial transcripts, and any other documentation that might support his claims, in order for this Court to review the merits of his application."[20] On June 7, 2006, Pedelahore filed with

---

[17]St. Rec. Vol. 2 of 10.

[18]St. Rec. Vol. 1 of 10; Rec. Doc. No. 1-2, p. 20. The district court dismissed Pedelahore's post-conviction application with neither an answer from the State nor any further proceedings pursuant to La. Code Crim. P. arts. 928 and 929. Article 928 provides: "The application may be dismissed without answer if the application fails to allege a claim which, if established, would entitle the petitioner to relief." Article 929 provides: "If the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court, the court may grant or deny relief without further proceedings."

[19]St. Rec. Vol. 2 of 10; 2006-KW-0422.

[20]State v. Pedelahore, 2006 KW 0422 (La. App. 1 Cir. 5/30/06) (unpublished opinion); St. Rec. Vol. 2 of 10; Rec. Doc. No. 1-2, p. 18.

the Louisiana First Circuit an "Application for Re-hearing on Relator's Writ of Review for Post-Conviction Relief."[21] On September 18, 2006, the Louisiana First Circuit denied Pedelahore's application, stating: "Although much latitude is given to writ applications filed by or on behalf of pro se prisoners, this Court chooses not to address claims presented in an eighty-page memorandum. See Uniform Rules-Courts of Appeal, Rule 4-5 & Rule 2-12.2."[22]

On October 11, 2006, Pedelahore filed a writ application with the Louisiana Supreme Court, asserting the same claims that he had raised before the state trial and appellate courts.[23] On August 15, 2007, the Louisiana Supreme Court, without stated reasons, denied Pedelahore's writ application.[24]

On September 6, 2007, Pedelahore filed a federal habeas corpus application.[25] On July 13, 2009, Pedelahore's habeas corpus petition was dismissed without prejudice for failure to exhaust state court remedies.[26]

---

[21]St. Rec. Vol. 2 of 10; 2006 KW 1524.

[22]State v. Pedelahore, 2006 KW 1524 (La. App. 1 Cir. 9/18/06) (unpublished opinion); St. Rec., Vol. 2 of 10; Rec. Doc. No. 1-2, p. 19.

[23]St. Rec. Vol. 2 of 10; 2006 KH 2568.

[24]State ex rel. Pedelahore v. State, 961 So.2d 1156 (La. 2007); La. S. Ct. Order, 2009 KH 2568, 8/15/07; St. Rec. Vol. 1 of 10; Rec. Doc. No. 1-2, p. 17.

[25]Pedelahore v. Cain, C.A. No. 07-5473 "N"(6); St. Rec. Vol. 3 of 10.

[26]Pedelahore v. Cain, 2009 WL 2045982 (E.D. La. July 13, 2009), C.A. No. 07-5473 "N"(6); Rec. Doc. No. 1-2, pp. 10 and 13.

On September 13, 2009, Pedelahore filed his second application for post-conviction relief with the state trial court, raising the same claims that he had raised in his first post-conviction application.[27] On October 1, 2009, the state trial court dismissed Pedelahore's post-conviction application. The dismissal was based upon the court's finding that the application was repetitive and, therefore, subject to dismissal under La. Code Crim. P. art. 930.4. The court also reviewed the merits but, once again, without an answer and without further proceedings, citing La. Code Crim. P. arts. 928 and 929.[28]

On October 30, 2009, Pedelahore sought relief from the Louisiana First Circuit Court of Appeal.[29] On January 20, 2010, the Louisiana First Circuit, without stated reasons, denied Pedelahore's writ application.[30]

On February 11, 2010, Pedelahore filed a writ application with the Louisiana Supreme Court.[31] On February 18, 2011, the Louisiana Supreme Court denied Pedelahore's writ application, citing: "La. C.Cr.P. art. 930.8; State ex rel. Glover v. State, 93-2330 (La. 9/5/95), 660 So.2d 1189; La.C.Cr.P. art. 930.3; State ex rel. Melinie v.

---

[27]St. Rec. Vol. 4 of 10.

[28]St. Rec. Vol. 4 of 10; Rec. Doc. No. 1-2, p. 23.

[29]St. Rec. Vol. 10 of 10; 2009 KW 2007.

[30]State v. Pedelahore, 2009 KW 2007 (La. App. 1 Cir. 1/20/10) (unpublished opinion); St. Rec., Vol. 4 of 10; Rec. Doc. No. 1-2, p. 22.

[31]St. Rec. Vol. 9 of 10; 2010 KH 0406.

<u>State</u>, 93-1380 (La. 1/12/96), 665 So.2d 1172. Cf. La.C.Cr.P. art. 930.4(A); La.C.Cr.P. art. 930.4(D)."[32]

## II.   <u>FEDERAL HABEAS PETITION</u>

On June 27, 2011, Pedelahore signed the instant federal habeas corpus petition, asserting the following grounds for relief:  (1) There was insufficient evidence to support his conviction.   (2) The state trial court's erroneous rulings denied him due process. (3) He was denied the right to exercise his peremptory challenges intelligently.   (4) His constitutional rights were violated due to prosecutorial misconduct during opening and rebuttal arguments.   (5) His constitutional rights were violated when the trial court held a competency hearing in the middle of trial in front of the jury.   (6) His constitutional rights were violated because he was not present during every stage of the proceedings. (7) His constitutional rights were violated when the prosecutor violated the sequestration order by allowing witnesses to meet in his office.   (8) He received ineffective assistance of counsel.   (9) He was denied a fair trial when the State introduced unreliable testimony and evidence regarding the use of anatomically correct dolls.   (10) He was denied his right to confront, cross-examine and present a defense when the prosecution introduced

<hr>

[32]<u>State ex rel. Pedelahore v. State</u>, 57 So.3d 325 (La. 2011), La.S.Ct.Order, 2010 KH 0406; St. Rec. Vols. 4 and 9 of 10; Rec. Doc. No. 1-2, p. 21. In <u>Glover</u>, the Louisiana Supreme Court held that an appellate court can deny post-conviction relief as untimely under article 930.8, even if the lower court addressed the merits or did not consider timeliness. <u>Id.</u> at 1201-02. In <u>Melinie</u>, the Louisiana Supreme Court, relying on La. Code Crim. P. Art. 930.3, ruled that claims of errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief. Article 930.4(A) provides for the dismissal of claims that were "fully litigated in an appeal." Article 930.4(D) provides that a "successive application may be dismissed if it fails to raise a new or different claim."

hearsay statements and testimony.  (11) His constitutional rights were violated when the prosecution introduced inadmissible hearsay testimony under the guise of an exception to the hearsay rules.  (12) He was denied his right to present a defense when the court limited his questions concerning sex and denied his right to introduce letters obtained through discovery.  (13) He was denied due process when the State was allowed to introduce evidence of bad character and other crimes.  (14) He was denied due process when the State was allowed to introduce irrelevant and prejudicial evidence. (15) He was denied due process when the jury was allowed to bring written evidence into the jury room.  (16) He was denied due process when the prosecution knowingly used false evidence to obtain a conviction.  (17) He was denied due process when the State suppressed favorable evidence.  (18) He was denied due process when the State destroyed or failed to preserve favorable evidence. (19) He was denied due process when the State introduced evidence pursuant to a statute that was applied retroactively to his case.  (20) He was denied due process when he was forced to proceed to trial before a biased judge.  (21) He was denied an effective appeal.  (22) He was denied effective assistance of appellate counsel.[33]

---

[33]Rec. Doc. No. 1.

The State filed a memorandum in opposition to the petition, alleging that Pedelahore's petition is not timely filed and that it is procedurally barred.[34] Pedelahore filed a traverse to the State's response.[35]

## III.  GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[36] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Pedelahore's petition, which was tendered for filing by the Clerk on July 1, 2011, and which is deemed filed on June 27, 2011.[37]

---

[34]Rec. Doc. No. 10.

[35]Rec. Doc. No. 11.

[36]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[37]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Pedelahore's petition was filed by the clerk of this court on July 1, 2011, when the filing fee was received. Pedelahore's signature on his petition was dated June 27, 2011. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin, 310 F.3d at 843 (mailbox rule applies even if inmate has not paid the filing fee at the time of

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record reflects that Pedelahore has exhausted all available state court remedies.[38]  However, the State asserts the defense that this petition is untimely.[39]  Under the AEDPA, a petitioner is required to bring his Section 2254 petition within one year of the date his conviction became final by the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1).[40]  However, the one-year prescriptive period is tolled during the time a properly filed application for state post-conviction or other collateral relief is pending.  28 U.S.C. § 2244 (d)(2).

The State argues that the AEDPA's one-year statutory limitation was not tolled during the almost two-year period during which Pedelahore's initial federal habeas

---

mailing) (citing Spotville, 149 F.3d at 374).

[38]As reflected in my review of the procedural history, claims (1) and (2) were raised on direct appeal, which Pedelahore exhausted in his state court proceedings.  Claims (3) through (22) were raised in the state court post-conviction proceedings, which Pedelahore likewise exhausted in the state courts.

[39]Rec. Doc. 10, p. 4.

[40]There are other triggers that commence the running of the one-year statute of limitations, but none are applicable in the instant matter.

corpus petition was pending. <u>Duncan v. Walker</u>, 533 U.S. 167, 181 (2001) ("§2244(d)(2) does not toll the limitation period during the pendency of a federal habeas petition"). However, Section 2244(d)(2) is only one of two ways in which the AEDPA statute of limitations may be tolled. The United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may also be equitably tolled, but only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005); <u>Fisher v. Johnson</u>, 174 F.3d 710, 713 (5th Cir. 1999), <u>cert. denied</u>, 531 U.S. 1164 (2001); <u>Cantu-Tzin v. Johnson</u>, 162 F.3d 295, 299 (5th Cir. 1998); <u>Davis v. Johnson</u>, 158 F.3d 806, 810 (5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. <u>Pace</u>, 544 U.S. at 418-19; <u>Cousin v. Lensing</u>, 310 F.3d 843, 848 (5th Cir. 2002).

In my view, the unduly lengthy time period of almost two years during which Pedelahore's first petition was pending in this court, a delay in no way attributable to the petitioner, warrants equitable tolling. Thus, I find the instant action timely. <u>See</u> <u>Hardy v. Quarterman</u>, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the

court.)  Davis v. Johnson, 158 F.3d 806, 808 n. 2 (5th Cir. 1998) (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond statute of limitations).

The State also asserts the defense "that this action is procedurally barred."[41]  I find that Pedelahore's claims (3) through (22) are procedurally barred, but that his claims (1) and (2) are not.  Therefore, I will address the procedural default issue before proceeding to the merits of Pedelahore's remaining two claims.

IV.  PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  Amos, 61 F.3d at 338.

_____

[41]Rec. Doc. 10, p. 5.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.

Pedelahore's claims (3) through (22) were raised in both his first and second state applications for post-conviction relief. These claims were ultimately dismissed by the reasoned decision of the Louisiana Supreme Court, which cited La. Code Crim. P. art. 930.8, State ex rel. Glover, La. Code Crim. P. art. 930.3, State ex rel. Melinie, and La. Code Crim. P. arts. 930.4(A) and 930.4(D). The Louisiana Supreme Court therefore denied relief as to these claims on the bases that the application was untimely; that claims related to the sentencing or excessiveness of the sentence should have been raised on direct appeal and were not; that claims which were fully litigated on appeal are not entitled to re-consideration unless warranted in the interest of justice; and that the application was subject to dismissal because it was successive and did not raise new or different claims.

A.    INDEPENDENT AND ADEQUATE

For the foregoing state-imposed procedural bars to prevent review by this federal habeas court, the bars must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. Amos, 61 F.3d at

338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  <u>Glover</u>, 128 F.3d at 902.

1.  <u>LA. CODE CRIM. P. ART. 930.8 AND STATE EX REL. GLOVER</u>

The Louisiana Supreme Court relied upon La. Code Crim. P. art. 930.8 and the decision in <u>State ex rel. Glover</u>, indicating that Pedelahore's second post-conviction application, in which he asserted the same claims designated in the instant action as claims (3)-(22), was not timely filed.  As to the independence of Article 930.8, the United States Fifthe Circuit Court of Appeals in <u>Glover v. Cain</u> held that denial of relief premised on the untimeliness of a claim under Article 930.8 "is sufficient to fulfill the independence requirement" of the procedural default doctrine.  <u>Glover</u>, 128 F.3d at 902. The same is true in this case.  The Louisiana Supreme Court's ruling was clear and express in its reliance on Article 930.8 and <u>State ex rel. Glover</u> when denying Pedelahore's last writ application.

The United States Fifth Circuit has also squarely held that because "Louisiana courts have regularly invoked [Article 930.8] to bar untimely claims," it is an "adequate" rule, <u>i.e.</u>, it "is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims."  <u>Id.</u> (citing <u>Dugger v. Adams</u>, 489 U.S. 401, 410 n.6 (1989); <u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988); and <u>Amos</u>, 61 F.3d at 339).  Because the Louisiana Supreme Court's decision rested on an

independent and adequate state rule of procedural default, this court may not review Pedelahore's claims (3)-(22).

2.    LA. CODE CRIM. P. ART. 930.3 AND STATE EX REL. MELINIE

The Louisiana Supreme Court also relied upon La. Code Crim. P. art. 930.3 and State ex rel. Melinie, indicating that Pedelahore's claims concerning the multiple bill adjudication and sentencing, including the effectiveness of his representation in that proceeding, were barred from review because they were not challenged on direct appeal.

This court has repeatedly held that State ex rel. Melinie and La. Code Crim. P. art. 930.3 are independent and adequate state grounds for dismissal which bar review by the federal courts in a habeas corpus proceeding.  See, e.g., Neal v. Kaylo, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (Art. 930.3 and State ex rel. Melinie are independent and adequate); Leonard v. Hubert, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); Marshall v. Hubert, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same); Ardis v. Cain, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (same).  Based on this authority, I find that the bar imposed under La. Code Crim. P. art. 930.3 and State ex rel. Melinie is also independent and adequate to bar review of the merits of Pedelahore's claims related to his multiple offender adjudication and sentencing.

3.     LA. CODE CRIM. P. ART. 930.4(A) and 930.4(D)

As reflected above, the claims raised in Pedelahore's second state court post-conviction application were not raised on direct appeal.  Thus, Article 930.4(A) could not be the basis for dismissing Pedelahore's post-conviction claims.  Even if these claims had been denied pursuant to Article 930.4(A), such a denial would not bar Pedelahore from seeking federal habeas corpus relief.  See Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994) (Article 930.4(A) "is not a procedural bar in the traditional sense" and therefore, does not bar federal habeas corpus review.); Bell v. Cain, 2002 WL 31002831, *9 n. 37 (E.D. La. 2002) (Africk, J.) ("A claim denied pursuant to La.C.Cr.P. art. 930.4(A) is not procedurally barred in a federal habeas corpus proceeding," citing Bennett).

Instead, the Louisiana Supreme Court also relied on La. Code Crim. P. Art. 930.4(D) in denying Pedelahore's second post-conviction application as successive because he raised the same claims in his first post-conviction application.  "The bars to repetitive claims and successive petitions found in La. Code Crim. P. Art. 930.4 are clearly independent state law procedural bases for denying review of an inappropriately raised post-conviction claim," and "the bar in Article 930.4(D) prevents further review based on the assumption that an issue was addressed in a prior proceeding and is now repetitive. . . ." Nicholson v. Michael, 2006 WL 2088306, *5,  (E.D. La. June 5, 2006) (No. Civ.A. 05-6490) (emphasis in original); cf. Graham v. Johnson, 168 F.3d 762, 774

20

n. 7 (5th Cir. 1999) (citing <u>Felker v. Turpin</u>, 518 U.S. 651, 655-58 (1996) ("an application filed after a previous application was <u>fully adjudicated</u> on the merits is a second or successive application within the meaning of 28 U.S.C. § 2244(b)").[42]

In this case, Pedelahore's first post-conviction application, which consisted of all the claims set forth in his second post-conviction application, was adjudicated on the merits by the state district court, albeit without fully expressed reasons. Thus, these claims were properly subject to the procedural bar set forth under La. Code Crim. P. art. 930.4(D).[43]

B.     <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claims will result in a "fundamental miscarriage of justice." <u>Glover</u>, 128 F.3d at 902 (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

---

[42]Section 2244(b) provides, in pertinent part:

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

[43]To the extent the district court's decision, based upon its lack of reasoning, could be deemed insufficient to warrant the application of Article 930.4(D), the claims were nevertheless properly barred as untimely pursuant to Article 930.8.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. <u>Id.</u> at 486.

In this case, Pedelahore has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana Supreme Court. My review of the record does not support a finding that any factor external to the defense prevented Pedelahore from raising claims (3)-(22) in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State that prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." <u>Hogue</u>, 131 F.3d 466, 497 (5th Cir. 1997) (citing <u>Engle</u>, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Pedelahore has not alleged any actual prejudice. <u>Ratcliff v. Estelle</u>, 597 F.2d 474 (5th Cir. 1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Pedelahore's claims (3)-(22) are therefore procedurally barred from review by this federal habeas corpus court. <u>See</u> <u>Trest v. Whitley</u>, 94 F.3d 1005, 1008 (5th Cir. 1996)

(habeas review precluded when petitioner neglected to allege actual prejudice and cause for failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), <u>vacated on other grounds</u>, 522 U.S. 87 (1998).[44]

## C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

Pedelahore may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claims (3)-(22) are not reviewed. <u>Hogue</u>, 131 F.3d at 497 (citing <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); <u>accord</u> <u>Murray</u>, 477 U.S. at 496; <u>Glover</u>, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. <u>Campos v. Johnson</u>, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); <u>Nobles</u>, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his

---

[44]The Supreme Court vacated the Fifth Circuit's opinion on the limited ground that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. <u>Id.</u>

procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Pedelahore does not present anything and the record contains nothing that suggests his actual innocence on the underlying conviction for aggravated oral sexual battery. He presents no evidence or argument of innocence that was not already presented to and resolved by the jury and the state trial court. For these reasons, Pedelahore has failed to overcome the procedural bar to these claims. Claims (3)-(22) are procedurally barred and must be dismissed with prejudice for that reason.

As discussed below, his remaining claims, (1) and (2), must be dismissed on their merits. I find that these claims, i.e., (1) insufficient evidence supported his conviction and (2) the trial court's erroneous rulings resulted in a denial of due process, are not procedurally barred because they were addressed only on the merits in Pedelahore's direct appeal and were not the subject of the procedural bars subsequently imposed by the Louisiana Supreme Court in its February 18, 2011 decision denying his final state court writ application at the end of his post-conviction proceedings.

V.     STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and ©).

Determinations of questions of fact by the state court are "presumed to be correct

. . . and we will give deference to the state court's decision unless it 'was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding.'"   Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28

U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).   The amended statute also

codifies the "presumption of correctness" that attaches to state court findings of fact and

the "clear and convincing evidence" burden placed on a petitioner who attempts to

overcome that presumption.   28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state

court's decision "'was contrary to, or involved an unreasonable application of, clearly

established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir.

2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.   The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from

this Court's decisions but unreasonably applies that principle to the facts
of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.    INSUFFICIENT EVIDENCE (CLAIM NO. 1)

Pedelahore complains that there was insufficient evidence to support his

conviction because "the only evidence presented was the uncorroborated, contradictory

testimony of the six-year-old victim."[45] On federal habeas review, an insufficient

evidence claim presents a mixed question of law and fact. Perez v. Cain, 529 F.3d 588,

_____

[45]Rec. Doc. 1-1, p. 25. At the time of trial the victim was eight-years old.

594 (5th Cir. 2008); Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Under Jackson v. Virginia, 443 U.S. 307 (1979), this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Id., 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 Fed. Appx. 817, 821 (5th Cir. 2011). Thus, to determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See McDaniel v. Brown, __ U.S. __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial.") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. United States v. Young, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th

27

Cir. 1993); see also Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

Pedelahore was charged with and convicted of aggravated oral sexual battery. On March 11, 2001, when Pedelahore committed the crime, aggravated oral sexual battery was defined in relevant part, as follows:[46]

> Aggravated oral sexual battery is an oral sexual battery committed when the intentional touching of the genitals or anus of one person and the mouth or tongue of another is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> ****

---

[46]This was also the definition used to charge the jury. St. Rec. Vol. 7 of 10, p. 508.

  (4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.

La. Rev. Stat. § 14:43.4.[47] See also State v. Gaal, 800 So.2d 938, 945 (La. App. 5th Cir. 10/17/01).

  The requisite intent is present "whenever there is specific intent,"[48] and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.  La. Rev. Stat. § 14:10(2).[49]  Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant

---

[47]Pursuant to Acts 2001, No. 301, § 14:43.4 was repealed effective August 15, 2001, after Pedelahore allegedly committed the crime and was charged with it.  The crime is now defined under §§14:41.A and C(1) and 14:42.A(4) which provide, in pertinent part:

> § 14:41
> A.  Rape is the act of anal, oral, or vaginal sexual intercourse....
> ****
> C.  "[O]ral sexual intercourse" means the intentional engaging in any of the following acts with another person:
>  (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.
>
> § 14:42
> A.  Aggravated rape is a rape ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent because it is committed under any one or more of the following circumstances
>  (4) When the victim is under the age of thirteen years.  Lack of knowledge of the victim's age shall not be a defense.

[48]Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act".  La. Rev. Stat. Ann. § 14:10(1).

[49]This was the instruction provided to the jury.  St. Rec. Vol. 7, p. 508.

and the circumstances surrounding those actions.  State v. Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1 Cir. 1989); State v. Tate, 851 So.2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So.2d 714, 717 (La. 1987).

In support of his insufficiency of the evidence claim, Pedelahore argues that there was no physical evidence to corroborate the victim's story.  However, it is well-established under Louisiana law that a victim's uncorroborated testimony can be sufficient to establish the requisite elements of a crime.  As the Louisiana Fifth Circuit Court of Appeal recently stated:

> [O]ne witness' [sic] testimony, if believed by the trier-of-fact, is sufficient support for a requisite factual conclusion. The victim's testimony alone can be sufficient to establish the elements of a sexual offense, even if the State does not introduce medical, scientific or physical evidence to prove the commission of the offense.

State v. Lirette, _ So.3d _, 2012 WL 2476386, *7 (La. App. 5th Cir. 6/28/12) (citations omitted).

Pedelahore also identifies the following alleged deficiencies in the trial evidence: (1) inconsistencies between the victim's testimony and other witnesses' testimony regarding matters such as whether she had been to Pedelahore's apartment before and when she spoke to her mother about the incident;[50]  (2) the victim's "incredible lack of memory," such as her inability to remember whether she had spoken to the district

---

[50]Doc. Rec. No. 1-1, p. 25.

attorney's office or an investigating detective regarding the incident;[51] (3) the implausibility of the victim's story as reflected by her admission that the door of the bedroom was open and Pedelahore's brother was nearby reading the newspaper when the incident occurred [Pedelahore argues that it is "simply unbelievable" that he "would do anything to C.H. with the door wide open, with his brother awake, and within viewing distance the entire time."[52]]; (4) the victim's inability to provide "specifics," such as how long the oral sexual contact lasted;[53] and (5) the fact that immediately after the incident, "C.H. behaved normally," not accusing him of the crime until two weeks later.[54]

As noted above, the weight of the evidence and the credibility of the witnesses are determinations strictly reserved for the jury. In this case, jurors heard the alleged inconsistencies between witnesses, the victim's inability to provide details, her statement that the door was open and the brother was in the house when the incident occurred, and that the victim waited two weeks, after speaking with her mother, before she accused Pedelahore of sexually assaulting her. Nevertheless, the jury clearly believed the victim's account of the incident, a credibility determination function that was fully in the exclusive province of the jury, and it rendered a guilty verdict accordingly.

---

[51]Id. at p. 25.

[52]Id. at p. 26.

[53]Id. at p. 26.

[54]Id. at p. 26. Pedelahore suggests that the victim's mother "put the idea into C.H.'s head." Id.

Viewing the evidence in the light most favorable to the prosecution, I find that a rational trier of fact could easily have found that the essential elements of aggravated oral sexual battery were proven beyond a reasonable doubt. The state courts' rejection of Pedelahore's insufficient evidence claim does not represent an unreasonable application of Supreme Court law to the facts of this case.

IV.     ERRONEOUS TRIAL RULINGS (CLAIM NO. 2)

Pedelahore argues that the state trial court erred in two important evidentiary rulings: the first concerning the admission of opinion testimony from a fact witness, and the court's subsequent denial of defense counsel's motion for a mistrial based upon the erroneous admission of that testimony; and the second concerning admission into evidence of the victim's videotaped interview.

A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); accord Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (citing Estelle, 502 at 67-68; Lewis v. Jeffers, 497 U.S. 764, 780 (1990); West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996)); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). Habeas corpus review is limited to questions of constitutional dimension, and

federal courts generally do not review the admissibility of evidence under state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992). Similarly, whether a mistrial should be granted is governed by state law and does not involve consideration of any questions of federal or constitutional law, and review of such claims is not proper on habeas review. Thomas v. Ieyoub, No. 93-3757, 1994 WL 286198, at *2 (5th Cir. June 22, 1994) (citing Derden v. McNeel, 978 F.2d 1453, 1458 (5th Cir. 1992)); Smith v. Whitley, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994) (citing Lavernia v. Lynaugh, 845 F.2d 493, 496 (5th Cir. 1988)); Weatherspoon v. Cain, No. 10-4500, 2011 WL 4351397, at *12 (E.D. La. July 8, 2011), report & recommendation adopted, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); Williams v. Cain, No. 06-0224, 2009 WL 1269282, at *25 (E.D. La. May 7, 2009), aff'd, 359 F. App'x 462 (5th Cir. 2009).

Thus, the States are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee. Burgett v. Texas, 389 U.S. 109, 113-14 (1967); Williams v. Price, 343 F.3d 223, 230 n.3 (3d Cir. 2003); Pemberton v. Collins, 991 F.2d 1218, 1223 (5th Cir. 1993); Nees v. Culbertson, 406 F.2d 621, 625 (5th Cir. 1969); Tillman v. Thaler, No. A-09-CA-582-SS, 2010 WL 2731762, at *13 (W.D. Tex. July 9, 2010). Pedelahore's claims concerning the allegedly erroneous admission of evidence may support federal habeas corpus relief only

if the state court evidentiary rulings violate due process in such a way as to render the criminal proceedings fundamentally unfair. Lisenba v. California, 314 U.S. 219, 236-37 (1941); Gonzales v. Thaler, 643 F.3d 425, 430 (5th Cir. 2011); see also Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as "to render the trial fundamentally unfair or violate an explicit constitutional right"). "Federal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the challenged evidence is a crucial, critical, or highly significant factor in the context of the entire trial." Thomas v. Lynaugh, 812 F.2d 225, 230 (5th Cir. 1987) (citations omitted); accord Gonzales, 643 F.3d at 430; Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

Similarly, the trial court's denial of Pedelahore's "motion for a mistrial justifies federal habeas corpus relief only if it was 'error . . . so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.'" Hernandez v. Dretke, 125 F. App'x 528, 529 (5th Cir. 2005) (quoting Bridge v. Lynaugh, 838 F.2d 770, 772 (5th Cir. 1988)). Thus, to obtain relief, Pedelahore

> must show that the trial court's error had a "substantial and injurious effect or influence in determining the jury's verdict." [He] must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." In determining harm, this court should consider (1) the importance of the witness's testimony; (2) whether the testimony was cumulative, corroborated, or contradicted; and (3) the overall strength of the prosecution's case.

Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); Woods v. Johnson, 75 F.3d 1017, 1026 (5th Cir. 1996)) (citing Sherman v. Scott, 62 F.3d 136, 142 n.6 (5th Cir. 1995)).

The questions of whether evidence is constitutionally admissible and a mistrial should be granted based on such evidence are mixed questions of law and fact. Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir.), cert. denied, 522 U.S. 880 (1997). Under the applicable standard of review, this court therefore must determine if the state trial court's decisions – first, to admit opinion testimony from a fact witness and subsequently deny defense counsel's motion for a mistrial, and second, to admit the victim's videotaped interview – are contrary to or involve an unreasonable application of Supreme Court precedent.

As to the denial of defense counsel's motion for a mistrial based upon the admission of opinion testimony from a fact witness, the prosecution offered the testimony of Detective Tina Quaves regarding the consistency of the victim's statements based upon the detective's viewing of a videotaped interview of the victim.[55] The testimony at issue, defense counsel's objections and motion for mistrial, and the trial court's ruling, are set forth below.

---

[55]Detective Quaves explained that she was not the interviewer nor was she in the room where the interview took place, but she could see and hear the interview via videotape. Quaves further explained that the interviewer was wearing an ear plug so that Quaves was able to communicate with her and could instruct her with regard to questions she wanted the interviewer to ask. St. Rec. Vol. 6 of 10, pp. 310-11.

Q. Were you able to determine whether or not what [the victim] said on March 30th was consistent with what you knew?

A. Yes sir, it was.

MR. STAMPS [defense counsel]:

    Your Honor, that calls for an opinion.

BY THE COURT:

    Overruled.

MR. STAMPS:

    Objection for the record.

EXAMINATION BY MR. GARDNER [prosecutor]:

Q. With regard to the core event, what you saw was consistent with what [the victim's mother] told you?

A. Correct.

Q. How would you describe your observations of [the victim's] interview?

A. [She] was very consistent with her statements.

BY MR. STAMPS:

    Your Honor, I would object.  It's opinion testimony.  She's not qualified as  an expert in that regard.

BY THE COURT:

    Overruled.

BY MR. STAMPS:

    It goes to guilt or innocence, Your Honor.

BY THE COURT:

    I have already ruled on the objection.

BY MR. STAMPS:

    Objection for the record.

EXAMINATION BY MR. GARDNER:

Q. You can continue.

A. She seemed very relaxed during the interview.  She seemed intelligent. She seemed to know what had happened to her.  She was very consistent with the statements that her mother had already told me had happened and that she told her mother.  She was very believable.

Q. Okay.  Now, based upon that, did you prepare an arrest warrant?

A. Yes, sir, I did.

****

BY MR. STAMPS:

    Your Honor, I'd like to make a motion.

BY THE COURT:

    All right.  Come forward

(The following proceedings were held at the bench):

BY MR. STAMPS:

Her answer that it was believable is a question that goes to guilt or innocence. She's not qualified to make that determination, and I, therefore, move for a mistrial at this time.

BY MR. GARDNER:

I disagree. I believe it's a comment that any person would expect to be made. If this officer did not believe the child or did not find her statement credible, consistent, or believable she never would have applied for that arrest warrant.

**** 

BY THE COURT:

Let me clarify my ruling . . . . The basis for my ruling is that I think that her testimony was within the purview of a witness that certainly testimony can be elicited regarding someone's opinion and without having to be qualified as an expert as to whether someone was telling the truth or not, and for that reason, I don't think the state needed to lay any kind of a predicate to elicit that testimony....

That's the basis for my ruling on mistrial.[56]

The relevant Louisiana evidentiary rule, La. Code Evid. art. 701, provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

---

[56]St. Rec. Vol. 6 of 10, pp. 312-15. The trial court further denied defense counsel's request for a jury instruction regarding the limited scope of Detective Quaves's "opinion" testimony. St. Rec. Vol. 6 of 10, pp. 314-15.

Interestingly, though not dispositively, Louisiana Code of Evidence Article 701 is identical in relevant part to Federal Rule of Evidence Article 701.[57] In <u>United States v. Catlett</u>, 97 F.3d 565, 571 (D.C. Cir. 1996), the court observed:

> [E]very federal court to consider the issue of dual testimony as both a fact and expert witness has concluded that the Federal Rules of Evidence permit such testimony. <u>See</u> <u>United States v. Thomas</u>, 74 F.3d 676, 683 (6th Cir.) (refusing to adopt a <u>per se</u> prohibition on using an officer as both a fact and expert witness), <u>cert. denied</u>, 517 U.S. 1162, 116 S.Ct. 1558, 134 L.Ed.2d 659 (1996); <u>United States v. Foster</u>, 939 F.2d 445, 450-52 (7th Cir.1991) (allowing dual testimony but urging care to avoid jury confusion); <u>United States v. Young</u>, 745 F.2d 733, 760 (2d Cir.1984) (finding it was not improper for the Government to elicit expert testimony from officers who testified as fact witnesses), <u>cert. denied</u>, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985).

In addressing this issue on direct appeal, the Louisiana First Circuit, noting Article 701, stated: "At the outset, we note that a lay witness, not testifying as an expert, is permitted to offer opinion evidence rationally based on the perception of the witness, where it is relevant to the determination of a fact at issue."[58] The court determined that Detective Quaves's testimony did not run afoul of the Louisiana evidentiary rule because it was based on her perception of the victim and was relevant to the determination of why she obtained a warrant for Pedelahore's arrest. Thereafter, the court observed that to obtain relief, defendant had the burden of showing that the prosecution deliberately

---

[57]The difference is that Federal Rule of Evidence 701 provides an additional restriction on a fact witness offering opinion evidence, providing that such testimony must not be "based on scientific, technical, or other specialized knowledge. . . ."

[58]St. Rec. Vol. 2 of 10; <u>Pedelahore</u>, No. 2004 KA 0678, p. 10.

elicited inadmissible testimony to prejudice him and that a substantial right was adversely affected by the trial court's error.[59]  The court determined that Pedelahore had not met his burden, reasoning that jurors were able to evaluate the victim's credibility for themselves by virtue of her testimony on the videotape <u>and</u> at trial.  The court also observed that the trial court specifically charged jurors that <u>they</u> were the ultimate fact-finders.  <u>Id.</u> at 11.

The trial court's admission of Detective Quaves's testimony did not run afoul of evidentiary rules.  More importantly, I find that the admission of the testimony did not constitute a violation of Pedelahore's right to due process.  Pedelahore has cited no federal decisions – and I have found none – establishing that the admission of police officers' lay opinions based upon their general experiences or observations runs afoul of defendants' constitutional rights.  <u>See</u> <u>Medley v. Conerly</u> 2011 WL 2604845, *5 (E.D. Mich. 2011) (admission of police investigator's opinion testimony that guns generally do not yield useful fingerprints is not violative of petitioner's constitutional rights absent a federal case showing such an admission offends fundamental principles of justice).

As the state appellate court correctly observed, jurors were able listen to and observe C.H., both on the witness stand and on the videotaped interview.  The detective's testimony about which Pedelahore complains was a mere sliver of the entirety of

---

[59]<u>Id.</u> at pp. 10-11 (citing La. C.E. arts. 771 and 103(A)).

testimony and evidence at trial from which the jury could determine the victim's credibility. The jurors were clearly able to determine her credibility for themselves based on the overall strength of the rest of the prosecution's case without undue influence resulting from Detective Quaves's brief expression of her opinion. Under these circumstances, I cannot conclude that the challenged evidence was so critical, highly significant or substantially injurious to defendant in the overall context of the trial that the court's ruling rendered the proceedings fundamentally unfair.

Pedelahore also argues that C.H.'s videotaped interview was improperly admitted into evidence because it "was fraught with leading questions."[60] I have been unable to review the content of the video interview because neither the tape itself nor a transcript of the interview is included in the state court record.[61] However, the trial transcript establishes that Amy Streicher, the psychologist who conducted the interview and who was on the witness stand when the tape was played, was questioned extensively regarding the types of questions she asks interviewees, and she explained in detail the methods she uses and why she specifically does not ask leading questions. During cross-examination, defense counsel pointedly asked Streicher if she knew what a leading question was. Streicher answered in the affirmative, explaining: "A leading question is a question posed in order to get an answer that you want." When asked whether, in

---

[60]Doc. No. 1-1, p. 30.

[61]The trial transcript merely reflects that "the tape was played for the jury." St. Rec. Vol. 6 of 10, p. 376.

C.H.'s interview, she "engage[d] in leading questions," she unequivocally responded in the negative.[62]  As with the victim, the jury was able at trial to observe and hear Streicher, both in the videotape and live at trial, to determine for itself what weight and credibility to assign to this evidence.

Significantly, the videotape was not the only evidence of the victim's story that was admitted at trial. C.H., the victim herself, in response to non-leading questions, testified extensively at trial that Pedelahore sexually assaulted her.[63]  Both the victim and Streicher were subject to vigorous cross-examination.[64] The trial record, viewed as a whole, provided ample opportunity for the defense to challenge and ultimately argue, as counsel did in his closing argument,[65] that C.H.'s version of events in the videotape was not worthy of credence.  As with the trial court's other evidentiary rulings, it cannot be concluded that the admission of the videotape of the victim's interview into evidence was so crucial or highly significant that it resulted in fundamentally unfair proceedings.

Pedelahore has failed to show that the state trial court's evidentiary rulings and its related denial of his motion for a mistrial resulted in a federal constitutional violation. The state trial court's rulings in this regard were not contrary to or an unreasonable

---

[62]St. Rec. Vol. 6 of 10, pp. 374-381.

[63]St. Rec. Vol. 6 of 10, p. 399.

[64]Id. at pp. 378-92 and 401-16.

[65]Id. at pp. 498-99.

application of clearly established federal constitutional precedent. Pedelahore is not entitled to federal habeas corpus relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Joel Pedelahore for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[66]

New Orleans, Louisiana, this ___24th___ day of September, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[66]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.